UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
ALBERTSON WATER DISTRICT,

                        Plaintiff,

    -against-

THE DOW CHEMICAL COMPANY, *et al.*,

                      Defendants.

-------------------------------------------------------------------- x

MEMORANDUM AND ORDER

No. 18-CV-7282-NG-JRC

JAMES R. CHO, United States Magistrate Judge:

    This action was brought by the Albertson Water District ("Albertson")[1] against The Dow Chemical Company ("Dow"), Legacy Vulcan, LLC, formerly known as Vulcan Materials Company ("Vulcan"), and Vibrantz Corporation, formerly known as Ferro Corporation ("Ferro") (collectively, "defendants"). On October 11, 2024, defendants moved to compel the production of documents that were authored by, sent to, or shared with individuals employed by plaintiffs' outside engineering firms, H2M Architects & Engineers ("H2M") and D&B Engineers & Architects ("D&B") (collectively referred to as "engineers" or "outside engineers"), over which plaintiffs have asserted a claim of privilege. *See* Mot. to Compel, Dkt. 188 (hereafter "First Motion to Compel"). On October 30, 2024, the Court held oral argument on the motion and directed plaintiffs to supplement their privilege log. *See* Min. Entry dated 10/30/2024. The parties met and conferred several times and resolved their dispute as to some of the documents at

---

[1] This Order relates to the *Albertson* action as well as the actions brought by: (1) *Carle Place Water District*, No. 18-cv-7279; (2) *Garden City Park Water District*, No. 18-cv-7277; (3) *Jericho Water District*, No. 18-cv-7281; (4) *Oyster Bay Water District*, No. 18-cv-7272; (5) *Port Washington Water District*, No. 18-cv-7266; (6) *Roslyn Water District*, No. 18-cv-7269; (7) *Water Authority of Great Neck North*, No. 18-cv-7271; and (8) *West Hempstead Water District*, No. 18-cv-7278 (collectively, "plaintiffs").

issue.  *See* Status Report dated 1/17/2025 ("1/17/2025 Status Report") at 1, Dkt. 203.

On January 8, 2025, plaintiffs supplemented their privilege logs and asserted a new privilege claim (*i.e.*, "common interest privilege") over 30 of the documents at issue in defendants' motion to compel.  *See id*. at 2 n.3.

On February 18, 2025, defendants filed a second motion to compel, Dkt. 212 (hereafter "Second Motion to Compel"), in connection with documents relating to the Long Island Water Conference ("LIWC") that plaintiffs withheld based on the assertion of the "common interest privilege."

At a hearing held on March 13, 2025, the Court granted defendants' Second Motion to Compel production of the documents withheld under the claim of a common interest privilege. Min. Entry dated 3/13/2025.  Based on the March 13, 2025 ruling, the Court further ordered the parties to advise the Court whether their positions had changed with respect to any of the documents at issue in defendants' First Motion to Compel.  *See id*.

Based on the March 13, 2025 ruling, plaintiffs revisited the documents that were the subject of the First Motion to Compel and agreed to produce 30 documents that they had previously withheld.  *See* Status Report dated 3/20/2025 (3/20/2025 Status Report") at 1, Dkt. 221.  Plaintiffs, however, continued to withhold 54 documents under a claim of *de facto* employee privilege.  Dkt. 221-1 (operative privilege log).  Among those 54 documents, plaintiffs also belatedly asserted the common interest privilege for five of those documents.  *Id.*

### DISCUSSION

Plaintiffs argue that the documents sought in the First Motion to Compel are protected by the attorney-client privilege because plaintiffs' outside engineers are "de facto water district employees."  First Motion to Compel at 5-7, Dkt. 188; 1/17/2025 Status Report at 3-4, Dkt. 203.

2

Plaintiffs invoke the so-called "functional equivalent" exception to what would otherwise be a waiver of the attorney-client privilege.

The Second Circuit narrowly circumscribes the attorney-client privilege, which, attaches to communications between client and counsel for purposes of soliciting or providing legal advice. *See In re County of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007). Communications between an attorney and someone who is not the attorney's client generally are not protected by the privilege. *Id.* Similarly, the privilege generally is deemed to have been waived if communications between attorney and client are shared with a third party. *See Schaeffler v. U.S.*, 806 F.3d 34, 40 (2d Cir. 2015). "[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).

As the proponent of the privilege, plaintiffs bear the burden of establishing that the privilege applies and that the privilege has not been waived. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019); *see also In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973). Under the waiver doctrine, "it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence." *In re Horowitz*, 482 F.2d at 81-82.

In *Upjohn v. U.S.*, 449 U.S. 383 (1981), the Supreme Court held that the attorney-client privilege applied to communications by corporate employees to corporate counsel, made at the direction of corporate superiors, in order to secure legal advice that were kept confidential by the company. *See id.* at 394-95. As noted by plaintiffs, the "functional equivalent" exception originated in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), but has never been recognized by the

3

Second Circuit. There, the Eighth Circuit held that an outside consultant who assisted a two-person company develop land was functionally equivalent to a company employee. In that case, the court noted that the consultant assisted with the project from its inception and for several years thereafter; worked out of the company's office; was the company's sole representative at meetings with potential tenants and local officials; appeared at public hearings on the company's behalf and often spoke with the company's counsel alone. In every respect, the contractor acted as an employee. *In re Bieter Co.*, 16 F.3d at 933-34, 939-40.

The Court notes that plaintiff has cited to case law applying both the New York law of privilege and federal common law of privilege. *See* First Motion to Compel. at 5-7, Dkt. 188; 1/17/2025 Status Report at 3, Dkt. 203. Since New York courts that have considered the "functional equivalent" exception have largely cited to cases applying federal common law, the Court also applies federal common law in its analysis. *See, e.g., Frank v. Morgans Hotel Grp. Mgmt. LLC*, 116 N.Y.S.3d 889 (N.Y. Sup. Ct. 2020) (cited by plaintiffs).

District Judge Nina Gershon has noted that she was "skeptical that the Second Circuit would adopt the exception," and that assuming such an exception were "viable," Judge Gershon found "that it should be construed narrowly." *In re Restasis Antitrust Litig.,* 352 F. Supp. 3d 207, 213 (E.D.N.Y. 2019). Judge Gershon observed that courts in this Circuit have considered the following factors in determining whether there is functional equivalency:

> whether the consultant exercised independent decision-making on the company's behalf; possessed information held by no one else at the company; served as a company representative to third parties; maintained an office at the company or otherwise spent a substantial amount of time working for it; and sought legal advice from corporate counsel to guide his or her work for the company.

*Id.* at 213.

Balancing the factors discussed by Judge Gershon, the Court finds that the narrow exception to waiver of the attorney-client privilege does not apply here.

First, the engineers do not exercise independent decision-making authority on behalf of plaintiffs. Like the consultants in *In re Restasis*, although the engineers provide "significant input" into "decisions relating to water contamination and treatment," *see* First Motion to Compel at 6, there is no evidence that they have the authority to make decisions independently. 352 F. Supp. 3d at 215.

Second, the engineers do not exclusively possess information that is not held by others at the water district. *See* First Motion to Compel at 4. Although the engineers undoubtedly have "specialized expertise" that is not held by employees of the plaintiffs, on which plaintiffs "rely heavily," *id.* at 6, that is essentially the same reason any outside consultant is hired by a company, for expertise that its own employees do not possess.

Third, the engineers do not maintain an office at any of plaintiffs' water districts nor do they maintain email addresses with those entities. *See id.* at 4. Indeed, H2M and D&B work for many water districts simultaneously, some of which are plaintiffs in the related cases. *See id.* & n.4 ("H2M provided services for eight of the Plaintiffs. D&B provided engineering services for five of the Plaintiffs."). In fact, some individual engineers performed work for multiple plaintiffs. *See id.*

Like the consultants in *Restasis*, the outside engineers here were retained through "routine consulting agreements," did not "exercise independent decision making," "worked out of their own offices," "communicated via the email addresses provided by their consulting firms," and "served as consultants for other companies while they were assisting" plaintiffs. 352 F. Supp. 3d at 214-15. This is not a case where plaintiffs' outside engineers are "so integrated

5

into [plaintiffs'] corporate structure that [they] sought and received legal advice" from plaintiffs' in-house counsel. *Id.* at 215. There is no evidence before the Court that the outside engineers had primary responsibility of "key corporate job[s]" at the water districts. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, 2017 WL 4676806, at *14 (S.D.N.Y. Oct. 17, 2017). Under these circumstances, the Court cannot find that the outside engineers carry out the functions and duties of a full-time employee of one of the water districts. *See id.* ("Businesses routinely rely on other companies to carry out important functions and services[] . . . If this relationship satisfied the functional equivalent standard, the exception could well swallow the rule."); *Universal Standard*, 331 F.R.D. at 90.

The cases plaintiffs rely on illustrate the differences between plaintiffs' outside engineers and those outside consultants who have been found to be the functional equivalent of a corporate employee. *See* First Motion to Compel at 5-7; 1/17/2025 Status Report at 3, Dkt. 203. The case, *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001), involved what Judge Gershon described as "unique circumstances" -- the principals of a foreign corporation "lacked experience in dealing with the Western media" and hired a "crisis management" public relations consultant, who was "incorporated into [the corporation's] staff to perform a corporate function" and largely worked out of the corporation's headquarters. *Id.* at 219. The consultant had "authority to make decisions on behalf of [the corporation] concerning its public relations strategy." *Id.*

In *Spectrum Dynamics Medical Ltd. v. Gen. Elec. Co.*, No. 18-CV-11386, 2021 WL 4131650 (S.D.N.Y. Sept. 9, 2021), the services agreement between the client and the consultant specifically provided that the consultants "acted as [company] employees and respected and

6

treated confidential and/or privileged information of [the company] as if [company] employees." *Id.* at *4.

In *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005), the court actually found a privilege waiver because the proponent of the privilege had not proven that the consultant was "so fully integrated into the [client's] hierarchy as to be a de facto employee of [the client]." *Id.* at 114 ("Mr. Tan's schedule, the location of his head offices, and the success of his consulting business all contradict the picture of Mr. Tan as so fully integrated into the APP hierarchy as to be a de facto employee of APP").

Finally, in *Frank v. Morgans Hotel Grp. Mgmt. LLC*, 116 N.Y.S.3d 889 (N.Y. Sup. Ct. 2020), the outside consultant had previously been employed with the company for 11 years and when his position with the corporation was eliminated, he was immediately retained as a consultant to perform the same duties and retained the same title. That consultant had a company email address, a company phone number, and access to the company's file server.

Here, the outside engineers were not so fully integrated as to be plaintiffs' *de facto* employees, nor has there been any showing that they were required to maintain confidentiality or that they provided or received essential advice from attorneys working for plaintiffs. *See SEC v. Rayat*, No. 21-CV-4777, 2023 WL 4420325, at *7 (S.D.N.Y. July 10, 2023) ("There is no evidence that Bhogal functioned as an employee who could by actions within the scope of [his] employment, embroil the corporation in serious legal difficulties, and who would have the most direct access to 'the relevant information needed' for counsel to provide advice."); *Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389, 392-93 (S.D.N.Y. 2021) (investment bank did not establish that it was the functional equivalent or *de facto* employee of clients); *Homeward Residential*, 2017 WL 4676806, at *14 (data storage and management firm was not given "primary

7

responsibility for a key corporate job," was "an independent company that provides services and technology to multiple clients" and the firm's "role in storing and managing data for [the client] did not integrate into [the client's] corporate structure"); *Narayanan v. Sutherland Global Holdings Inc.*, 285 F. Supp. 3d 604, 617 (W.D.N.Y. 2018) (consultant was hired "to propose recommendations concerning internal controls to [the company], not to decide whether to adopt them").

The Court further finds that even if a common interest privilege applied to five of the 54 documents at issue, the presence of the outside engineers would affect a waiver of the privilege. In any event, the Court previously held that plaintiffs failed to satisfy their burden of establishing that the common interest privilege protected similar documents involving the same or similar recipients.  *See* Min. Entry dated 3/13/2025.

To the extent plaintiffs claim that any of the withheld documents constitute protected work product, plaintiffs have not addressed their assertion of work product in their moving or supplemental papers.  Thus, the Court concludes that plaintiffs failed to meet their burden of demonstrating that the documents were created "because of the prospect of litigation" and "would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' First Motion to Compel (Dkt. 188). Plaintiffs shall produce the withheld documents by October 1, 2025.

**SO ORDERED**

Dated: Brooklyn, New York
September 24, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge
